# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.   2:05-cr-0175-PMP-GWF |
| vs. | **FINDINGS & RECOMMENDATIONS** |
| MICHAEL THOMIS, | |
| Defendant. | |

This matter is before the Court on Defendant Michael Thomis's Motion to Suppress Evidence for Fourth Amendment Violation (#15), filed April 11, 2006; the Government's Opposition to Motion to Suppress (#17), filed April 24, 2006; and Defendant's Reply (#23), filed May 11, 2006. The Court conducted an evidentiary hearing in this matter on May 19, 2006. At the conclusion of the hearing, the Court granted Defendant's counsel's request to permit the parties to submit supplemental briefs. Defendant's Supplementary Briefing (#27) was filed on May 26, 2006. Defendant also filed an Addendum to the Supplementary Briefing on June 8, 2006 (#28). The Government has not filed a supplemental brief.

**FACTS**

The sole witness who testified at the evidentiary hearing was Las Vegas Metropolitan Police Department Officer Eric Kerns. Officer Kerns testified that he has been a police officer for fourteen years and for the past eight years has been assigned as a canine unit officer. Officer Kerns testified that he works in a regularly marked patrol vehicle. He responds to canine calls and also handles regular

police functions including routine patrol. Office Kerns testified that when not responding to canine unit calls, he patrols in high crime areas. Officer Kerns testified that through his initial training as a police officer and also through more extensive training as a canine patrol officer, he is able recognize the odor of marijuana. On February 6, 2005, at approximately 10:15 p.m., Officer Eric Kerns was engaged in routine patrol in the vicinity of Fremont Street and 21st Street in Las Vegas, Nevada, which he described as a high crime area. Officer Kerns had two police dogs in his vehicle. While patrolling in this area, Officer Kerns testified that he performed random records checks on the license plates of vehicles traveling in the area. Officer Kerns conducted a records check on the vehicle occupied by Defendant which revealed that the registration was suspended and he stopped the vehicle for that reason. Officer Kerns testified that he had no other suspicions or reason for initiating the stop.

After stopping the vehicle, Officer Kerns approached the driver's side window. Upon the driver opening his window, Officer Kerns testified that he smelled a strong odor of marijuana emanating from the interior of the vehicle. Officer Kerns observed that in addition to the driver, there was a passenger in the front seat of the vehicle. According to Officer Kerns, he asked the driver, who was subsequently identified as Nathaniel Weaver, if he had been smoking marijuana and the driver stated that he had. Officer Kerns asked the driver for his license. The driver stated that he did not have his license. Officer Kerns testified that he then asked the driver to step out of the vehicle.

Officer Kerns testified that he asked the driver to exit the vehicle because he had smelled the odor of marijuana, the driver admitted to smoking marijuana, the stop occurred in a high crime area, no other officers were present and Officer Kerns wanted to separate the driver from the passenger for the officer's safety. Officer Kerns described the driver, Mr. Weaver, as cooperative. Mr. Weaver exited the vehicle and Officer Kerns escorted him back to the front of the police patrol vehicle. Officer Kerns testified that because he knows that persons involved in narcotics activities are frequently armed, he conducted a pat-down search of Mr. Weaver for the presence of weapons, but did not discover any.

Officer Kerns then asked Mr. Weaver for the passenger's name. Initially, Mr. Weaver was not able to provide the passenger's name, although he indicated that he had known him for a couple of years. Eventually, he identified the passenger as "Isaac." Officer Kerns then left Weaver at the front of the patrol vehicle and approached the passenger side of the stopped vehicle. The passenger, who was

subsequently identified as Defendant Michael Thomis[1], rolled down his window and the officer again smelled the odor of marijuana in the vehicle. Officer Kerns asked the Defendant for identification, but Defendant stated that he had none. The Defendant told the officer that his name was "Isaac." Officer Kerns asked the Defendant to step out of the vehicle, which he did in a cooperative manner. Officer Kerns testified that upon the Defendant existing the vehicle, he patted him down for the presence of weapons. Officer Kerns testified that his reasons for conducting a pat-down of Defendant were the same as those for which he patted down the driver: the officer was by himself, it was dark outside, the stop occurred in a high crime area, and the officer observed some narcotics activity which made him suspect that the Defendant might be armed. Upon patting down the Defendant, Officer Kerns felt an object in Defendant's right front pants pocket that he immediately recognized to be a handgun. The officer pulled the handgun from Defendant's pocket. Officer Kerns testified that Defendant at that point made a spontaneous statement to the effect of: "Shoot, I forgot that was in my pocket. I just bought it up the street."

Officer Kerns then radioed for back-up officer assistance. After the other officer arrived and secured the vehicle occupants, Officer Kerns searched the interior of the vehicle for drugs, weapons or contraband. During the vehicle search, Officer Kerns found a plastic bag in the center console which contained three smaller bags containing marijuana. The back-up officer also ran a records check on the Defendant Thomis and it was determined that Defendant Thomis was a convicted felon.

On May 18, 2005, Defendant was indicted in the United States District Court for violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), felon in possession of a firearm.

## **DISCUSSION**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). Evidence obtained in violation of the Fourth Amendment, and evidence derived from it, may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

---

[1] Defendant's true name is reportedly Isaac Taylor.

1   The Court is required to analyze a stop and frisk separately and determine the reasonableness of
2   each independently. *United States v. Mattarolo,* 209 F.2d 1153, 1157 (9th Cir. 2000) *citing United*
3   *States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988).  There is no dispute that Officer Kerns had valid
4   grounds to stop the vehicle occupied by Mr. Weaver and Defendant Thomis for a traffic law violation –
5   a suspended license plate or vehicle registration. *See Whren v. United States*, 517 U.S. 806 (1996);
6   *United States v. Lopez-Soto*, 205 F. 3d 1101, 1104-05 (9th Cir. 2000).  *See also Pennsylvania v. Mimms*,
7   434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 3231 (1977).  If an officer observes suspicious facts or
8   circumstances during the course of a routine traffic stop, he may expand the scope of his inquiry
9   commensurate with the reasonable suspicions that arise.  *United States v. Murillo,* 255 F.3d 1169, 1174
10  (9th Cir. 2001); *United States v. Rojas-Millan*, 234 F.3d 464 (9th Cir. 2000); and *United States v. Perez*,
11  37 F.3d 510, 514 (9th Cir. 1994).

12   In this case, Officer Kerns smelled the odor of marijuana in the vehicle upon making contact with
13  the driver, and also again smelled the odor when he  made contact with the passenger, the Defendant.
14  The Ninth Circuit has held that the odor of marijuana emanating from a vehicle provides probable cause
15  to search the vehicle. *See United States v. Laird*, 511 F.2d 1039 (9th Cir. 1975); *United States v.*
16  *Garcia-Rodriquez*, 558 F.2d 956 (9th Cir. 1977).   Based on this observation, Officer Kerns had
17  reasonable grounds to expand the scope of his investigation and to further detain Mr. Weaver and the
18  Defendant based on probable cause to believe that they were in possession of a controlled substance –
19  marijuana.

20   In *Pennsylvania v. Mimms,* the Supreme Court held that it is proper for an officer conducting a
21  routine traffic stop to order the driver to step out of the vehicle for purposes of officer safety.  The Court
22  stated that the additional intrusion on a person's liberty by ordering him to exit the vehicle during a
23  justified traffic stop is outweighed by the inordinate risk confronting a police officer as he approaches a
24  person seated in an automobile. *Id.,* 434 U.S. at 110-11.  In *Maryland v. Wilson*, 519 U.S. 408, 117
25  S.Ct. 882, 137 L.Ed.2d 41, (1997), the court extended this rule to passengers in a vehicle as well.  In
26  *Mimms* and other cases, the Court has noted that investigative detentions involving suspects in
27  automobiles are fraught with danger to police officers. *See Adams v. Williams*, 407 U.S. 143, 148, n.3,
28  92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77

1  L.Ed.2d 1201 (1983).   In this case, Officer Kerns also had reasonable grounds to order both vehicle
2  occupants to exit the vehicle based on his observation of the odor of marijuana emanating from the
3  vehicle.
4        An officer may conduct a limited protective pat-down search for weapons if he has reasonable
5  suspicion to believe that the suspect is armed and dangerous.  *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868,
6  20 L.Ed.2d 889 (1968).  *See also United States v. $109,179 in United States Currency*, 228 F.3d 1080
7  (9th Cir. 2000); United *States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000), *citing Adams v.*
8  *Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).  The court in *United States v.*
9  *$109,179 in United States Currency* states:

> "When the police ... have a reasonable suspicion that a suspect is armed, a *Terry* pat down for weapons is permissible." [*United States v. Flippin*, 924 F.2d 163, 166 (9th Cir. 1991).] "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." [*Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968.]
>
> An officer may conduct a limited protective search for concealed weapons if there is a reason to believe the suspect may have a weapon.  The officer must choose between being sure that the suspect is not armed and jeopardizing his own safety.

17        Whether a pat-down search is justified must be determined from the totality of the circumstances.
18  The nature of the suspected criminal activity is one factor in determining whether a suspect may be
19  armed and dangerous.  Certain suspected offenses, such as robbery, burglary, rape, assault with weapons,
20  homicide and dealing in large quantities of narcotics are sufficient, without other suspicious
21  circumstances, to justify a *Terry* pat-down search for weapons.  *See* W.R. LaFave, *Search and Seizure*,
22  4th Ed. (2004), § 9.6(a), pages 625-26.  *United States v. $109,179 in United States Currency* and the
23  Ninth Circuit's prior decision in *United States v. Post,* 607 F.2d 847, 851 (9th Cir. 1979), are consistent
24  with the decisions of other courts that an officer's reasonable suspicion that a suspect is engaged in drug
25  trafficking also provides reasonable suspicion that the person may be armed and dangerous because drug
26  traffickers are frequently armed.
27        On the other hand, the officer's observation of other facts may justify him in conducting a pat-
28  down search even during a routine stop for a traffic violation.  In *Pennsylvania v. Mimms, supra,* for

example, the officer stopped a vehicle for an expired license plate and ordered the defendant to exit the vehicle.  As the defendant did so, the officer noticed a large bulge under his sports jacket.  Fearing the defendant might be armed, the officer conducted a pat-down search and discovered a handgun.  The Court held that the officer's observation of the bulge constituted reasonable suspicion that the defendant might be armed and justified the pat-down search.

Defendant relies on *United States v. Thomas,* 863 F.2d 622 (9th Cir. 1988), in arguing that Officer Kerns did not have sufficient reason to perform a pat-down search on him.  In *Thomas*, the police received a report during the daytime that two men were offering to sell counterfeit money to persons near a store located at a certain intersection.  A police officer responded to the area where he observed two men in a vehicle in a nearby bank parking lot who appeared to match the description of the suspected counterfeiters.  After stopping the vehicle, the officer approached defendants' vehicle.  As he did so, the driver of the vehicle exited his car and walked toward the officer.  Upon seeing the defendant, the officer saw that he did not match the description of the counterfeiters.  The officer, however, asked defendant what he was doing in the bank parking lot.  The defendant stated that he was waiting for his wife.  The officer asked for and obtained defendant's driver's license, the picture of which matched the defendant.  The officer then asked defendant if he had any weapons.  The defendant responded no, whereupon the officer performed a pat-down search of defendant's body which resulted in the discovery of a handgun.

The court in *Thomas* held that the officer had reasonable suspicion to stop the vehicle and initially detain the defendant to investigate his presence in the area and obtain his identification.  The court held, however, that the officer's conduct after that point was not justified.  There was nothing inherently suspicious in the fact that defendant got out of his car without being asked to do so, and the officer had no reason to continue the detention once he determined that defendant did not match the description of the reported counterfeiters, had obtained a plausible explanation for defendant's presence in the bank parking lot, and had obtained his identification.  Because nothing in the police dispatch suggested that the counterfeiting suspects were armed or dangerous, the officer had no basis to ask the defendant whether he had a weapon or conduct a pat-down search.  The officer also did not observe any other circumstance that would lead to a belief that defendant was armed.  There was no suspicious bulge

6

in defendant's clothing, defendant made no abrupt movement and did not engage in any furtive behavior that would have reasonably prompted the officer to fear for his safety. The court concluded that the officer's justification for the frisk was not indicative of a reasoned approach based on an articulable fear for his safety, but rather indicated a perfunctory attitude toward frisking a suspect once a justified stop has occurred.

In *United States v. Mattarolo*, 209 F.2d 1153 (9th Cir. 2000), the court distinguished *Thomas* and upheld a *Terry* stop and frisk. In that case, the police officer was patrolling a dark and isolated country road near midnight when he observed defendant's pick-up truck nosed into the driveway of a fenced construction storage area. The officer was aware that there was no normal business activity in the area at that time of night and suspected that the occupants of the vehicle were engaged in a burglary. The officer had previously been involved in the recoveries of stolen cars, drug arrests, and arrests involving guns and burglaries in that area. The officer stopped the truck as it drove away from the construction storage area. The defendant exited the truck and swiftly walked back towards the patrol car. The officer told the defendant to stop, which he did, and then asked the defendant if he had a gun, to which the defendant said no. The officer then conducted a pat-down search which led to the discovery of illegal drugs on defendant's person. In distinguishing *Thomas,* the court noted that the search occurred at nighttime in an isolated area. The defendant was a suspected burglar which carries with it a greater suspicion of being armed than does a suspected counterfeiter. The defendant walked swiftly towards the officer who was by himself in a dark and isolated area. Under these circumstances, the court held that the officer had reasonable and articulable reasons to fear for his safety which justified the protective pat-down search. In addition, unlike *Thomas,* the officer's suspicions and reasons for stopping and detaining the defendant had not dissipated or been resolved prior to conducting the pat-down.

In *United States v. $109,179 in United States Currency*, 228 F.3d 1080 (9th Cir. 2000), the court upheld a pat-down search of the defendant based on reasonable suspicion that he was engaged in drug trafficking. The officers had responded to a motel based on a report that a bag containing suspected narcotics was found in a guest room. Upon arriving at the motel, the officers tested the substance in the bag and confirmed that it was cocaine. During their investigation, the officers also developed additional information and evidence that the persons using the motel room and an adjacent room were engaged in

1  drug dealing.  While engaged in their investigation, the motel manager informed the officers that a man
2  involved in narcotics activity was on his way to the room where the drugs were discovered.  An officer
3  went into the hallway where he confronted the defendant as he knocked on the door of the room where
4  the cocaine was found.  The officer asked defendant for his name.  Defendant gave his name but had no
5  identification.  The officer drew his gun, but did not point it at defendant, instructed defendant to place
6  his hands on his head and escorted the defendant to the adjacent motel room where he conducted a pat-
7  down search for weapons.  Although no weapon was discovered, the pat-down search resulted in the
8  discovery of a large chain of keys in defendant's pocket and further investigation led to the discovery of
9  money, drugs, drug paraphernalia, and a loaded handgun in the vehicle that defendant had driven to the
10 motel.

11      The court held that the officer had reasonable grounds to stop the defendant based on suspicion
12 that he was engaged in narcotics activity and to perform a pat-down search on him for weapons.
13 Although the officer did not observe physical evidence, such as a bulge in clothing or suspicious
14 behavior indicating that the defendant was armed, the court, citing *Terry v. Ohio*, noted that it may be
15 reasonable to assume from the nature of the offense contemplated that the defendant is armed and
16 dangerous.  In distinguishing *United States v. Thomas, supra*, the court further stated:

> Officer Jones was in close proximity to an individual suspected of
> narcotics trafficking, his experience provided him with the knowledge that
> narcotics suspects are often armed and dangerous, and his belief that
> Maggio might be armed was not unreasonable.  "The law does not require
> that an experienced [police officer] enclosed in a small room with a man
> he reasonably suspects to be a dealer in narcotics, be certain that a suspect
> is armed before he can make a limited pat-down for weapons." [*quoting
> United States v. Post,* 607 F.2d 847, 851 (9th Cir. 1979).] Officer Jones'
> actions were reasonable under the circumstances.

22      Defendant argues that the facts of this case are distinguishable from *United States v. $109,179 in*
23 *United States Currency*, 228 F.3d 1080 (9th Cir. 2000), because the officer had reasonable suspicion that
24 the defendant was involved in a drug trafficking operation, whereas in this case Officer Kerns, at most,
25 had reasonable suspicion that Defendant and the driver of the vehicle were in possession of marijuana.
26 Defendant argues that Officer Kerns' observation of an odor of marijuana in the vehicle and the driver's
27 acknowledgment that he had been smoking marijuana, in the absence of any other circumstances
28 indicating that Defendant might be armed, was not sufficient to give Officer Kerns reasonable suspicion

to perform a pat-down search on Defendant. Defendant further argues that if the Court upholds the pat-down search of Defendant in this case, it will create precedent for a blanket-exception to the requirements of *Terry v. Ohio* by authorizing the police to conduct a pat-down search anytime an officer has the suspicion of the presence of narcotics. As Defendant notes, the Supreme Court has generally rejected blanket exceptions to the reasonableness or probable cause standards of the Fourth Amendment. *See Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (rejecting blanket exception to "knock and announce" rule for search warrants based on drug trafficking crimes, but holding that officers may not be required to knock and announce based on the totality of the circumstances.)

Defendant also relies on *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in which the Court held that an anonymous and uncorroborated tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun was not sufficient to give a police officer reasonable suspicion to stop and frisk a person at the location who matched the description provided by the tipster. The Court also rejected the state's argument that there should be a blanket exception to *Terry's* reasonable suspicion standard where police receive an anonymous tip that a person is in possession of a concealed firearm. The Court noted that such a blanket exception, if granted, could not be easily confined to allegations involving firearms. In this regard, the Court noted that several Courts of Appeal have held it *per se* foreseeable that persons carrying significant amounts of illegal drugs will be carrying guns as well. The Court, however, did not disapprove decisions such as *United States v. $109,179 in United States Currency*, which hold that possession of firearms is reasonably associated with persons suspected of being engaged in drug trafficking. Rather, the Court cited these decisions to illustrate how easily a blanket exception for anonymous tips involving firearms could be expanded to allow stops and frisks of persons based on an unreliable anonymous tip that they are engaged in drug trafficking or in possession of large quantities of drugs.

Defendant also cites *United States v. Rios*, 449 F.3d 1009 (9th Cir. 2006), in which the defendant challenged his conviction under 18 U.S.C. § 924(c)(1)(A) for possession of a firearm in furtherance of a drug trafficking crime. The defendant participated in a conspiracy to buy prescription drugs with fraudulent prescriptions and then sell drugs elsewhere for profit. During a search of defendant's motel

room, the police found a shotgun. There was no evidence that defendant used the room for purposes of selling drugs and no drugs were found in the room, although records relating to the conspiracy were found. The court stated that in order to convict a person under § 924(c)(1)(A), the government must show that the defendant intended to use the firearm to promote or facilitate the drug crime. Mere possession of a firearm by a person engaged in drug trafficking is not sufficient to convict a person under the statute. In this context, the court held that expert testimony that drug traffickers often use firearms for protection and intimidation in drug trafficking crimes is not sufficient because such evidence could be used to convict in any case in which a drug trafficker possesses a gun. The statute, however, requires proof that the defendant intended to use the firearm in furtherance of the drug trafficking.

*Rios* is, of course, clearly distinguishable from the issue of whether a police officer has reasonable suspicion that a suspect is armed and dangerous in order to perform a pat-down search for weapons. Obviously, the standard of proof required to convict a person of a crime involving possession of a firearm with the intent to further a drug trafficking crime is much higher than that required to be shown in determining whether a police officer has reasonable suspicion that a suspect is armed and dangerous. Contrary to Defendant's argument, *Rios* did not reject the general association between firearms and persons suspected of drug trafficking crimes. Rather, the court simply held that such an association is not sufficient evidence to convict a defendant under 18 U.S.C. § 924(c)(1)(A). *Rios* did not discuss cases such as *United States v. $109,179 in United States Currency* involving a *Terry* pat-down search in the context of an investigatory stop of a person suspected of drug trafficking or other narcotics activity.

The closest case factually that the Court has found to the circumstances presented here is *United States v. Sakyi*, 160 F.3d 164 (4th Cir. 1998). In that case, a police officer stopped a vehicle at nighttime for a non-functioning brake light. After stopping the vehicle, the officer asked the driver for his license and registration. The driver stated that he did not have his license with him. When the driver opened the glove box to retrieve his vehicle registration, the officer observed a box for a certain type of cigar which

in his experience was almost always used to contain marijuana.[2] Under further questioning by the officer, the driver stated that he never had a license. The officer also asked the defendant, the passenger in the vehicle, for his identification or license to determine if he could drive the vehicle home. The defendant orally provided his name, but stated that he also did not have a license or written identification with him. The officer radioed dispatch for a check on the driver's license and asked the driver to step out of the vehicle. While awaiting a response from dispatch, the officer asked the driver if there was anything illegal in the vehicle. The driver said no and gave the officer consent to search the car. When dispatch reported that the driver's license was revoked, the officer waited for the arrival of a back-up officer and when he arrived, the officer placed the driver under arrest and placed him in the custody of the back-up officer. The officer then requested the defendant to exit the vehicle and upon his doing so, the officer conducted a pat-down search of defendant to make sure he was not armed. During the pat-down search, a large piece of tin foil containing crack-cocaine fell out of defendant's pants' leg. A subsequent search of the vehicle also resulted in the discovery of a firearm.

In analyzing whether the pat-down search of defendant was justified under *Terry*, *Sakyi* began by noting that where an officer has only a generalized suspicion or concern that a vehicle's occupants may be armed and dangerous, the Supreme Court has only authorized an officer to require vehicle occupants to exit a vehicle. *See Pennsylvania v. Mimms* and *Maryland v. Wilson, supra.* An officer, however, must have specific, articulable suspicion of danger before he is entitled to conduct a pat-down. Because a frisk or pat down is substantially more intrusive than an order to exit a vehicle or to open its doors, the court held that an officer must have justification for a frisk or a pat-down beyond the mere justification for the traffic stop. The court then stated:

> That showing, however, may be satisfied by an officer's objectively reasonable suspicion that drugs are present in a vehicle that he lawfully stops. Moreover, when drugs are suspected in a vehicle and the suspicion is not readily attributable to any particular person in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect. They

---

[2] The court accepted the officer's testimony that the particular cigar box was closely associated with the possession of marijuana. In this case, of course, Officer Kerns had more concrete evidence that the vehicle contained marijuana based on his training and experience in recognizing the odor of marijuana.

> are in the restricted space of the vehicle presumably by choice and presumably on a common mission. Furthermore, as we have previously noted, guns often accompany drugs. *See Stanfield,* 109 F.3d at 984; *United States v. Perrin,* 45 F.3d 869, 873 (4th Cir.1995) (noting that "it is certainly reasonable for an officer to believe that a person engaged in selling of crack cocaine may be carrying a weapon for protection"). In the absence of ameliorating factors, the risk of danger to an officer from any occupant of a vehicle he has stopped, when the presence of drugs is reasonably suspected but probable cause for arrest does not exist, is readily apparent.

In *Sakyi*, the court found that the officer had reasonable suspicion that there were illegal drugs in the vehicle which could not be solely attributed to the driver. There were other factors that did not reasonably allay the officer's suspicion or apprehension, but rather heightened them. These included the fact that neither defendant nor the driver could provide identification, the stop occurred in a high crime area associated with drug and firearm crimes, and the defendant was wearing loose clothing which made it difficult for the officer to visually determine whether he was armed. Although a back-up officer was present, the court concluded that the reduced safety risk resulting from his presence did not eliminate the justification for the brief pat-down search of defendant. The court also noted the officer's concession that the defendant's conduct was not suspicious. The court held, however, that suspicious movement or behavior by a passenger is not necessary when other factors such as those in the case are present.

Decisions from other courts of appeal involving somewhat similar circumstances have resulted in varying conclusions. In *United States v. Phelps*, 349 F.3d 219 (5th Cir. 2003), an officer briefly detained a passenger in a bus station after his narcotics dog alerted to the passenger's luggage. The court held that the officer had reasonable suspicion that the defendant might be armed after his narcotics dog reacted to the scent of narcotics on the defendant and based on the officer's testimony that weapons accompany narcotics. The officer's concerns were also furthered because the defendant and his companion were wearing large jackets that could conceal a weapon. The officer was also outnumbered two to one and the stop occurred in a public bus station which posed a danger to others. In *Phelps*, however, the officer did not perform a pat-down search, but instead asked or directed the defendant to empty his pockets and lift his shirt. The court stated that this was less intrusive than a physical pat-down and was justified by the officer's suspicions.

In *United States v. Manjarrez*, 348 F.3d 881 (10th Cir. 2003), an officer stopped a vehicle on the

1  interstate highway for a routine traffic violation. After issuing the driver a warning and advising him he
2  was free to leave, the officer asked defendant if he would answer a few questions. The defendant agreed
3  and the officer asked him whether there were any guns or alcohol in the car. The defendant said no and
4  the officer asked for consent to search the vehicle which the defendant granted. Before searching the
5  vehicle, the officer performed a pat-down search on the defendant, which defendant subsequently argued
6  vitiated his consent to search the car. Evaluating the pat-down under *Terry,* the court held that it was
7  reasonable because the officer who was unassisted at the time and could not reasonably turn his back on
8  the defendant and search the vehicle without making certain that the defendant was unarmed.

9  In *United States v. Wald*, 216 F.3d 1222 (10th Cir. 2000), however, the court held that an officer
10  did not have reasonable suspicion to perform a pat-down search on a passenger in a vehicle which the
11  officer had stopped for a cracked windshield. In that case, the officer detected the odor of burnt
12  methamphetamine emanating from the vehicle and observed that the passenger's eyes were bloodshot
13  and glassy and both the driver and the passenger appeared nervous. The court in that case found that the
14  officer's purpose in conducting the pat-down search was to search for drugs not weapons. The court
15  stated, however, that regardless of the officer's subjective purpose, the circumstances did not rise to an
16  objective suspicion that the passenger was armed and dangerous.

17  Although *Sakyi* is arguably a step beyond the circumstances in the Ninth Circuit's decisions in
18  *United States v. $109,179 in United States Currency* and *Mattarolo* in which the officers had reason to
19  suspect that the suspects were engaged in drug trafficking or burglary, the Court believes that those
20  decisions are consistent with *Sakyi* where the officer has reasonable suspicion that the occupants of an
21  automobile are engaged in narcotics activity, and the surrounding circumstances, including the time and
22  location of the automobile stop and the greater number of suspects in comparison to the officer, provide
23  the officer with reasonable concern that the persons may be armed and pose a threat to the officer's or
24  others' safety.

25  In this case, the circumstances of the stop, as testified to by Officer Kerns whom the Court finds
26  to be credible, were equally, if not more, indicative of a threat to officer safety than those present in
27  *Sakyi*. The stop occurred at nighttime in a high crime area. The officer was alone, except for the two
28  police dogs located in his patrol vehicle. Officer Kerns testified that the area was lighted by street lamps

and the defendant's vehicle was also illuminated by the officer's patrol vehicle. The officer had reasonable suspicion that both the driver and passenger were engaged in some narcotics activity based on the odor of marijuana emanating from the vehicle. Neither person could provide the officer with written identification and the driver was arguably evasive in giving Officer Kerns' information regarding his passenger's identity. These circumstances, combined with the other factors, are also suspicious of persons engaged in narcotics or other criminal activity.

Unlike *Sakyi*, the back-up officer was not present when Officer Kerns conducted the brief pat-down of Defendant as he exited the vehicle. Defendant has suggested that Officer Kerns could have used the police dogs for added protection without the necessity of frisking the Defendant. While that may have been possible, it is also just as possible that the officer would have faced added exposure from an armed suspect while he retrieved the dog(s) from his vehicle. It is also questionable whether deploying a police dog in the presence of a suspect is a less coercive act or threat to the personal dignity of a person being detained than is a brief pat-down search for the presence of a weapon.

Finally, no evidence was presented that the manner in which Officer Kerns conducted the pat-down search exceeded the permissible scope of what is authorized in conducting a brief pat-down for the presence of a weapon. *See Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Officer Kerns testified that upon patting down Defendant's right front pants pocket he felt an object that he immediately recognized to be a handgun. The Court, therefore, finds that the manner in which the pat-down was performed did not violate Defendant's Fourth Amendment rights.

## CONCLUSION

The Court finds that Officer Kerns had reasonable suspicion under the totality of the circumstances to believe that the Defendant was armed and that the officer's conduct in performing a brief pat-down search on the Defendant which resulted in the discovery of the weapon was justified. Accordingly, the seizure of the firearm in Defendant's pants pocket did not violate the Fourth Amendment.

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant Michael Thomis's Motion to Suppress Evidence for Fourth Amendment Violation (#15) be DENIED.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn,* 474 U.S 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 29th day of June, 2006.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**